UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARUTYUN MARSIKYAN and PAYAM SAADAT, individually and on behalf of a class of similarly situated individuals<br><br>Plaintiffs,<br><br>vs.<br><br>MERCEDES-BENZ USA, LLC<br><br>Defendant | Case No.: CV08-04876 AHM (JTLx)<br><br>**OBJECTIONS TO CLASS ACTION SETTLEMENT** |

NOW COMES Sam P. Cannata of 14944 Hillbrook Drive, Hunting Valley, Ohio 44022, telephone number (216) 214-0796 (hereinafter referred to as "Objector") hereby file these Objections to the Proposed Settlement of this Class Action and, in support thereof, state as follows:

### PROOF OF MEMBERSHIP IN CLASS

Objector owns a 2002 Mercedes-Benz S-Class, Vehicle Identification Number (VIN) WDBNG75J62A292874. Attached is the itemized bill of the cost to repair the damage and expenses caused by what Objector believes to be caused by the defective reed valve in the air/water duct. The damage was caused by water infiltrating the passenger compartment which caused the electrical and shifter components to fail.

1

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he intends to appear at the Fairness Hearing presently scheduled for 10:00 A.M. on May 17, 2010, in the United States District Courthouse for the Central District of California, 312 N. Spring St., Los Angeles, California 90012 before the Honorable A. Howard Matz, United States District Judge.

## SUMMARY OF SETTLEMENT

The Settlement Agreement provides that all persons throughout the United States (including Puerto Rico) who currently own or lease a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215) vehicle; as well as all persons throughout the United States (including Puerto Rico) who previously owned or leased a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215), who incurred out-of-pocket, unreimbursed expenses for repair of water damage due to a clogged reed valve in the air/water duct during the period in which they leased or owned that vehicle are part of the Settlement Class. Mercedes-Benz USA, LLC ("MBUSA") has agreed to provide several settlement benefits such as Maintenance, a Reimbursement Program, Payment for Future Water Damage and Dealer Technical Bulletin Work. Class Counsel is requesting a fee of $1,500,000.00 plus reimbursement of expenses up to $35,000.00.

However, an analysis of the Class Action Settlement Agreement ("Settlement Agreement") reveals that much of Settlement Agreement fails to meet the legal prerequisites of fairness, adequacy and reasonableness to the members of the class, as more specifically set out in the subsequent objections. This Court is urged to reduce

2

the requested fees and to withhold a significant portion of the fees until such time as it receives a final report detailing exactly how much cash and non-cash benefit was actually distributed to the Class.

## OBJECTIONS

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

### 1. ATTORNEYS FEES ARE EXCESSIVE

Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $1.5 million in fees. That is entirely too much compensation considering that very little money may ever be paid to the Class Members.

A decision as to Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

### 2. MBUSA'S UNDERTAKINGS

MBUSA's Undertakings as prescribed in Paragraph 11 of the Settlement Agreement amount to mostly **non cash benefits,** aside from the **Reimbursement Program.** The non cash benefits such as the **Revised Maintenance Program, Coverage for Future Water Damage** and the **Dealer Technical Bulletin Work** are of questionable value to the Class.

In addition the **Reimbursement Program** has no minimum payout amount except "for one-time towing and car rental costs up to a combined maximum for towing

3

and rental costs of $150.00 per Class Member". Therefore if only 100 claims are made, only $15,000.00 will be paid to Class Members

3.  **DELAY IN PAYMENT OF ATTORNEYS' FEES**

In the instant case, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much cash is paid out to Class Members. The **Reimbursement Program** is entirely on a **"claims made"** basis, with no guaranteed fund at all; therefore, the Court does not know the exact amount that will be paid to the Class Members. Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair. It would not be fair to reimburse only $15,000.00 (or even $500,000.00) to the class while paying $1.5 million to counsel.

Based on anecdotal historical evidence, it is doubtful if more than 5% of those eligible will actually file a claim. This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure it that the attorneys' fees are reasonably related to the actual benefit received by the Class. This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation.

*"Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed*, Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by

calculating class members' **actual use.** *Id.* Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the amount made available to the class when calculating attorneys' fees, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar). *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar):

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known... "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons ... does not provide a sufficiently firm foundation to support a fee award..."

*In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121). The Court proceeded to wait until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the

redeemed coupons. The court awarded counsel $2.4 Million in fees. This Court should wait until it receives a report on actual redemption before awarding fees. Although this is not a coupon case, the principle of waiting until the benefit to the Class is ascertained is the same.

In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained" *Id.* at *20-28. This court went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar. See also *Managing Class Action Litigation: A Pocket Guide for Judges*.

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases. For example, in *In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck. In *Maffei v. Alert Cable TV of North Carolina*, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

Here, although no coupons are being issued. The concept is the same. Because this is, in effect, a claims-made settlement, the Court should await a report detailing exactly the amount of monetary benefit received by the Class. If the POF method is

6

chosen, it should be based on the actual relief received by the Class, not the potential. Therefore, this Honorable Court is urged to wait until it receives a report on actual payments to Class Members before awarding fees.

4. **VIOLATION OF FED. R. CIV. P. 23(h)**

In addition, Class Counsel has also violated Fed. R. Civ. P. 23 (h) (2) by not giving the class members adequate notice of their fee petition which is, in fact, a motion. The deadline for filing this Objection is April 12, 2010. However, as of such date no fee petition, or Motion for Award of Counsel Fees, has been filed. This puts Objectors in the awkward and impossible position of objecting to a Motion for Fees prior to the time that the motion is filed. Under Fed. R. Civ. P 23(h)(2), the Motion for Fees should be filed prior to the time of the objection deadline.

Rule 23(h), Fed.R.Civ.P. provides:

(h) Attorney's Fees and Nontaxable Costs.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
(2) A class member, or a party from whom payment is sought, may object to the motion.
(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

Since Objectors do not have an opportunity to review the Fee Petition prior to the objection deadline, they reserve the right to file additional and supplemental objections after the Fee Petition is filed.

Rule 23 (h) (2) above expressly provides that the class member "may object to the **motion**." In order to object to the "motion," the class member must first read the motion and thereby understand the asserted factual and legal basis for the legal fees being sought in the motion. Only then can the class member make a well informed, sensible and usable objection to the actual fees being sought. In fact, until a class member actually sees the motion for fees, he does not even know the **exact amount** of the fees being sought. Therefore, it is disingenuous, unfair, unreasonable and unlawful under Rule 23 (h) (2) to require the class members to file their written objections to the attorney fees at a time when the attorney fee motion has not even been filed.

5.  **CLEAR SAILING**

"Defendant agreed to pay, and will not oppose an award of attorneys' fees in the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00)" Settlement Agreement, Paragraph 22. However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

6. **OBJECTIONS BY SETTLEMENT CLASS MEMBERS**

Pursuant to Paragraph 16.1 (v) of the Settlement Agreement Objector hereby objects the requirement to provide "a list of any other objections he or she has submitted to any class action settlements in any state or federal court in the United States in the past five (5) years. If he or she has not objected to any other class action settlement in any court in the United States in the past five (5) years, he or she shall affirmatively so state in the written materials provided in connection with the objection of this Settlement. If the objection is presented through an attorney, the written objection must also include: (i) the identity and the number of Class Members represented by objector's counsel; (ii) the date

the objector's counsel assumed representation of the objector, and (iii) a list of the names of all cases, including case numbers and courts, in which the objector's counsel has filed an objection to a class action settlement in the last three years". This requirement is irrelevant and immaterial to the merits of an objection and should not be enforced. Furthermore this provision places a "chilling effect" on Class Members who have legitimate and lawful objections.

7. Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections after the Fee Request is filed.

8. The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

**WHEREFORE**, Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

*/s/ Sam P. Cannata*

SAM P. CANNATA (Ohio 0078621)
9555 Vista Way, Suite 200
Tel: (216) 214-0796
Fax: (216) 587-0999
Garfield Heights, Ohio 44125
samcannata@snider-cannata.com

## CERTIFICATE OF SERVICE

I certify that on April 12, 2010, I mailed the foregoing objection by ordinary U.S. Mail, postage prepaid to the following addresses and also filed the foregoing Objections:

Clerk of Court
US District Court for the
Central District of California
312 N. Spring Street
Los Angeles, California 90012

Robert L. Starr
The Law Offices of Robert L. Starr
23277 Ventura Boulevard
Woodland Hills, CA 91364-1002

Stephan M. Harris
Knapp, Petersen & Clarke
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203-1922

Terri S. Reiskin, Esq.
Wallace King Domike & Reiskin, PLLC
2900 K Street, NW
Harbourside, Suite 500
Washington D.C. 20007-5127

*Marsikyan v. Mercedes-Benz USA, LLC* Claims Administrator
P.O. Box 6159
Novato, CA 94948-6159

*[signature]*
SAM P. CANNATA (Ohio 0078621)
9555 Vista Way, Suite 200
Tel: (216) 214-0796
Fax: (216) 587-0999
Garfield Heights, Ohio 44125
samcannata@snider-cannata.com

Marsikyan v. Mercedes-Benz USA, LLC Claims Administrator
P.O. Box 6159
Novato, CA 94948-6159
1-877-695-7485

# CLAIM FORM AND RELEASE

## PART I: CLAIMANT IDENTIFICATION

Claim #: MEM-1018972-0-01  009378

903A009378*527*13814-01
Sam P Cannata
14944 Hillbrook Dr
Chagrin Falls, OH 44022-6804

Name/Address Changes (if any):

| First Name | Last Name |

| Address | |

| City | , State  Zip |

Email address: Samcannata@cannataphillipslaw.com

( 216 ) 587-0900
Area Code   Daytime Telephone Number

(    )
Area Code   Evening Telephone Number

( 216 ) 214-0796
Area Code   Cell Phone Number

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*Marsikyan v. Mercedes-Benz USA, LLC*, Case No. CV08-04876 AHM

Must be Postmarked By No Later Than September 14, 2010.

Please send this completed Claim Form and Release, together with any documents or other information to support your claim, to the Claims Administrator: *Marsikyan v. Mercedes-Benz USA, LLC* Claims Administrator, P.O. Box 6159, Novato, CA 94948-6159.

Please type or clearly print the following information:

## PART II: VEHICLE IDENTIFICATION

2002                        Mercedes-Benz S-Class              WDBNG75J62A292874
Model Year of Your Vehicle  Make and Model of Your Vehicle    Vehicle Identification Number (VIN)

## PART III: ELIGIBILITY

To be eligible to file a claim you must be a current or former owner or lessee in the United States (including Puerto Rico) of a model year 2001 through 2006 Mercedes-Benz S-Class (W220) or CL-Class (W215) vehicle who incurred out-of-pocket, unreimbursed expenses for repair of water damage due to a clogged reed valve in the air/water duct during the period you leased or owned that vehicle.

## PART IV: CLAIM FOR REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES DUE TO WATER DAMAGE CAUSED BY A CLOGGED REED VALVE

**You must answer all of the following questions regarding the repairs made to your vehicle:**

1. Date on which damage occurred or best estimate (month, day, year): 11/25/09
2. Date(s) on which repairs were made or best estimate (month, day, year): 11/27/09
3. Name and Address of Location Where Repairs Were Performed: Mercedes-Benz of Bedford  18122 Rockside Rd., Bedford, Ohio 44146
4. How much did you pay out-of-pocket (including your deductible and other costs) for water damage repairs? (enter "0" if you did not incur out-of-pocket costs in any category)

   a. Repair costs: $1339.30
   b. Towing: $130.00
   c. Car Rental: $1,469.30

Please sign the Claim Form on Page 2



**Mercedes-Benz Of Bedford**
18122 Rockside Road
Bedford, Ohio 44146
Phone (440) 359-1444
www.mercedesbenzbedford.com



SERVICE HOURS
MON. THRU FRI.
7:30 AM to 5:30 PM

| | |
|---|---|
| I ACKNOWLEDGE AND APPROVE EXTRA WARRANTY REPAIRS PERFORMED AS NEEDED. | CUST. INITIAL |
| SIGNED: X | |

THANK YOU FOR THIS OPPORTUNITY TO SERVICE YOU. IT IS OUR AIM TO PERFORM ALL THE REPAIRS REQUESTED ON THIS REPAIR ORDER TO YOUR COMPLETE SATISFACTION. IF OUR SERVICE WAS SATISFACTORY TELL YOUR FRIENDS. IF NOT, PLEASE TELL US IMMEDIATELY.

CUSTOMER NO. **16236**

SAM P CANNATA
14944 HILLBROOK DRIVE
HUNTING VALLEY, OH 44022

SCANNATA@SNIDER-CANNATA.COM
RESIDENCE PHONE  BUSINESS PHONE
440-893-9953   216-587-0900

ADVISOR: AARON NEAL
LICENSE NO.
YEAR / MAKE / MODEL: 02/MERCEDES-BENZ/S-CLASS/4-DR
V.I.N.: WDBNG75362A292874
COMMENTS
C# 2201751A292874   E# 11396030383420

TAG NO. 865
MILEAGE 4056
                77,540

INVOICE DATE: 11/27/09
COLOR: BLACK/
DELIVERY DATE: 04/30/02
SELLING DEALER:
R.O. DATE: 11/19/09

INVOICE NO. MBCS98855
STOCK NO.
DELIVERY MILES: 23,989
PRODUCTION DATE: 03/26/02
REPRINT# 1
MO: 77545

COURTESY ALT. TRANS PROVIDED ON 24 HR BASIS. MUST BE
RETURNED UPON COMPLETION. A $75.00 RENTAL FEE WILL BE
CHARGED IF NOT RETURNED PROMPTLY.
COMPLETE

JOB# 3 TOTALS-----------------------------------------

              JOB# 3 JOURNAL PREFIX  MBCS  JOB# 3 TOTAL       0.00

RECOMMENDATIONS-----------------------------------------
FOUND AIRMATIC LEAKING DOWN OVERNIGHT. DECLINED

TOTALS-----------------------------------------

```
************************************************
*                                              *
*  [ ] CASH      [ ] CHECK    CK NO. [     ]   *
*                                              *
*  [ ] VISA    [ ] MASTERCARD    [ ] DISCOVER  *
*                                              *
*  [ ] AMER XPRESS    [ ] OTHER    [ ] CHARGE  *
*                                              *
************************************************
```

TOTAL LABOR....     550.00
TOTAL PARTS....     811.40
TOTAL SUBLET...     110.00
TOTAL G.O.G....       0.00
TOTAL MISC CHG.       0.00
TOTAL MISC DISC    -136.14
TOTAL TAX......     114.04
                   --------
**TOTAL INVOICE $   1449.30**

CLIENT SIGNATURE

PAGE 2 OF 2          CUSTOMER COPY          [ END OF INVOICE ] 11:21am



**Mercedes-Benz Of Bedford**
18122 Rockside Road
Bedford, Ohio 44146
Phone (440) 359-1444
www.mercedesbenzbedford.com



SERVICE HOURS
MON. THRU FRI.
7:30 AM to 5:30 PM

---

| I ACKNOWLEDGE AND APPROVE EXTRA WARRANTY REPAIRS PERFORMED AS NEEDED. | CUST. INITIAL | THANK YOU FOR THIS OPPORTUNITY TO SERVICE YOU. IT IS OUR AIM TO PERFORM ALL THE REPAIRS REQUESTED ON THIS REPAIR ORDER TO YOUR COMPLETE SATISFACTION. IF OUR SERVICE WAS SATISFACTORY TELL YOUR FRIENDS. IF NOT, PLEASE TELL US IMMEDIATELY |
|---|---|---|
| SIGNED: X | | |

CUSTOMER NO. **16236**    ADVISOR AARON NEAL    TAG NO. 865    INVOICE DATE 11/27/09    INVOICE NO. MBCS98855

SAM P CANNATA
14944 HILLBROOK DRIVE
HUNTING VALLEY, OH 44022

YEAR / MAKE / MODEL 02/MERCEDES-BENZ/S CLASS/4 DR
LICENSE NO.    MILEAGE 77,540    COLOR BLACK/
DELIVERY DATE 04/30/02    PRODUCTION DATE 03/26/02
V.I.N. WDBNG75J62A292874    R.O. DATE 11/19/09    REPRINT# 1
SCANNATA@SNIDER-CANNATA.COM
RESIDENCE PHONE 440-893-9953    BUSINESS PHONE 216-587-0900    COMMENTS C# 2201751A292874  S# 11396030383420    DELIVERY MILES 33,089    MO: 77545

```
JOB#  1 CHARGES------------------------------------------------------------
LABOR---------------------------------------------------------------------
J# 1 27MBZ         AUTO TRANSMISSION         TECH(S):916              550.00
        CLIENT STATES VEH WILL NOT COME OUT OF PARK
        DUE TO INTERNAL FAILURE OF SHIFTER,AND DAMAGED SHIFTER
        LINKAGE.
        DIAG. AND REPLACED SHIFTER,SHIFT LINKAGE, AND RETAINER.
        ROAD TEST AFTER ALL OK

PARTS------QTY---FP-NUMBER---------------DESCRIPTION--------LIST PRICE-UNIT PRICE-
            1    220-267-33-24           FLOOR SHIFT        608.40      608.40      608.40
            1    220-260-05-33           SHIFTING ROD       198.00      198.00      198.00
            1    000-994-43-60           LOCK                 5.00        5.00        5.00
                                                          TOTAL - PARTS             811.40

MISC------CODE--------DESCRIPTION-----------------------CONTROL NO--------
          QP     COUPON PARTS                                               -81.14
          QS     COUPON SERVICE                                             -55.00
                                                   TOTAL - MISC            -136.14

JOB#  1 TOTALS-----------------------------------------------------------
                                                   LABOR                   550.00
                                                   PARTS                   811.40
                                                   MISC                   -136.14
                          JOB#  1 JOURNAL PREFIX  MBCS   JOB#  1 TOTAL    1225.26
JOB#  2 CHARGES-----------------------------------------------------------
LABOR----------------------------------------------------------------------
J# 2 70MBZ05        TOWING                TECH(S):916                  0.00
           Q
           Q
           Q
SUBLET-----PO#--------VEND INV#-INV.DATE-DESCRIPTION-----------------------
           8273                 11/23/09 TOW                             110.00
                                                   TOTAL - SUBLET        110.00

JOB#  2 TOTALS-----------------------------------------------------------
                                                   SUBLET                110.00
                          JOB#  2 JOURNAL PREFIX  MBCS   JOB#  2 TOTAL    110.00
JOB#  3 CHARGES-----------------------------------------------------------
LABOR----------------------------------------------------------------------
J# 3 05MBZ01        MERCEDES BENZ LOANER     TECH(S):916               0.00
        OPTION #1- NO HASSLE $19.95 CONVENIENCE FEE ALLOWS YOU TO
        DRIVE VEHICLE AND SIMPLY RETURN IT WITHOUT REFUELING.
        Initial here

        OPTION #2-REPLACE FUEL USED-IF YOU CHOOSE OPTION #2 AND DO
        NOT REPLACE FUEL USED, A CHARGE OF $5.00 PER GALLON WILL BE
```

PAGE 1 OF 2        CUSTOMER COPY        [CONTINUED ON NEXT PAGE] 11:21am

```
|LN# J# CODE DESCRIPTION.... T/N L/P/T    %/AMNT CWI PRICE....  CONTROL #........|
|  1  1 QP   COUPON PARTS    N   P       10.00% C    -81.14                      |
|  2  1 QS   COUPON SERVICE  N   L       10.00% C    -55.00                      |
```

| BILL TYPE | PARTS  | LABOR  | PARTS+LABOR | $ITEM | TOTAL   |
|-----------|--------|--------|-------------|-------|---------|
| CUSTOMER  | -81.14 | -55.00 | 0.00        | 0.00  | -136.14 |
| WARRANTY  |   0.00 |   0.00 | 0.00        | 0.00  |    0.00 |
| INTERNAL  |   0.00 |   0.00 | 0.00        | 0.00  |    0.00 |
| TOTALS    | -81.14 | -55.00 | 0.00        | 0.00  | -136.14 |

(E=ENTER) (A=ADD) (C=CHANGE) (D=DELETE) (P=PAGE)

#37

18122 Rockside Road
Bedford, Ohio 44146
(440) 439-0100

# Mercedes-Benz of Bedford

**LOANER AGREEMENT**

NO. 8087

| CUSTOMER NAME  SAM CANNATA | SERVICE RO NO  98855 | | LICENSE NO  DNL 2584 |
|---|---|---|---|
| HOME ADDRESS  4944 Hillbrook Dr. | YEAR-MODEL  AF 373664  10-C300-W/4 | | COLOR |
| CITY          STATE      ZIP CODE  Hunting Valley  OH  44022 | ODOMETER IN | | DATE AND TIME IN     AM/PM |
| DRIVER'S LICENSE NO  STATE  EXP DATE  RL047543   OH   44022 | ODOMETER OUT  5446 | | DATE AND TIME OUT  5:50  11/19/09  AM/PM |

If the loaner vehicle is not returned when requested to do so by a representative from Mercedes-Benz of Bedford, I agree to pay $ **75.00** per day for every day thereafter until I present the vehicle to an authorized representative of Mercedes-Benz service department.
The rental cost per day will be added to the client's service invoice or at the discretion of Mercedes-Benz of Bedford may be billed separately.
**CUSTOMER'S INITIALS X** _____

| | | GAS |
|---|---|---|
| It is the customer's responsibility to recheck the condition of the loaner vehicle for any additional damage not noted on the loaner agreement. If the customer does find damage, it MUST be noted on the agreement before the customer drives off the lot thus taking possession of the vehicle. Any damage that is not documented on agreement prior to possession will be the responsibility of the customer.  **VISUAL DAMAGE**  RIGHT / FRONT / REAR / LEFT  **CUSTOMER'S INITIALS X** _____ | MERCEDES-BENZ OF BEDFORD is providing this car at no cost to you. However, MERCEDES-BENZ OF BEDFORD asks that you replace all fuel used.  By initialing, customer agrees to replace all fuel used or pay $5.00/gallon for fuel used. The fuel charge will be added to the customer's service invoice or credit card.  X _____ INITIALS           Fuel Charge  Fuel Used _____ Gal.   $ _____ | OUT / IN  E / E  1/4 / 1/4  1/2 / 1/2  (3/4) / 3/4  F / F |

### INSURANCE VERIFICATION - IMPORTANT - READ BEFORE SIGNING

I hereby acknowledge that MERCEDES-BENZ OF BEDFORD is not providing any type of insurance protection or collecting any charges thereof. I understand and agree that I am responsible for all physical damage, bodily injury, property damage and fire and theft insurance coverage, and therefore I agree to indemnify MERCEDES-BENZ OF BEDFORD against and hold it harmless from all loss, cost and expense arising from, out of, or in any way related to my use of the vehicle. With respect to damage to the vehicle, all repairs or replacements shall be made at standard factory authorized prices. I represent that I have insurance coverage set forth in the box below.

I understand that is it my responsibility to either pay for repairs or get my insurance company to pay for repairs. I agree that I must pay any costs to repair the damaged vehicle that is not covered by my insurance company including my deductible and loss of use cost to the dealership while any repairs are made.

I understand that no other persons are authorized to drive this vehicle unless they have signed a separate loaner agreement.

In the case of accident or theft, I agree to make and sign as soon as possible, a detailed report to both local parties and MERCEDES-BENZ OF BEDFORD, the cause, names of persons injured and the nature and extend of any physical damage incurred.

I HAVE READ AND UNDERSTAND
THE TERMS OF THIS AGREEMENT

CUSTOMER SIGNATURE _____

**LOANER CARS ARE NOT PERMITTED TO LEAVE THE CLEVELAND-AKRON METRO AREA UNLESS PRIOR PERMISSION IS GIVEN BY DEALERSHIP.**

**MAXIMUM OF 50 MILES PER DAY.**

**PLEASE NO SMOKING IN VEHICLE.**

Insurance Company: _____
Agent's Phone: _____
Name of person verifying coverage at Agency: _____
Insurance Agent: _____
Policy Number: # 3320418-4
Comprehensive? ___ YES ___ NO  $ Coverage? _____
Collisions     ___ YES ___ NO  $ Coverage? _____
Does coverage extend to dealer's loaner/rental? _____

Read carefully all operating and use restrictions on reverse side. Must sign and return all keys and must turn in all bumpers upon check in. Report all accidents immediately.

Customer has read both sides of this agreement and agree to the terms and conditions.

Customer authorizes MERCEDES-BENZ OF BEDFORD to process a credit card for any damage or missing items. Customer may be prosecuted if vehicle is not returned when due back.

DEALER VERIFICATION BY _____ DATE ___/___/___

PREPARED BY _____   CUSTOMER INITIAL: _____   CHECKED IN BY _____

The Reynolds and Reynolds Company  FL618944 Q (12/08)