Stephen M. Harris (State Bar No. 110626)
smh@kpclegal.com
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone: (818) 547-5000
Facsimile: (818) 547-5329

Robert L. Starr (State Bar No. 183052)
starresq@hotmail.com
THE LAW OFFICES OF ROBERT L. STARR
23277 Ventura Boulevard
Woodland Hills, California 91364-1002
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiffs
ARUTYUN MARSIKYAN and PAYAM
SAADAT, individually and on behalf of a class of
similarly situated individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARUTYUN MARSIKYAN and PAYAM SAADAT, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DOES 1-500, inclusive,<br><br>Defendants. | NO. CV08-04876 AHM (FMOx)<br>[CLASS ACTION]<br><br>Assigned for All Purposes To The Hon. A. Howard Matz - Courtroom 14<br>Date Action Filed: June 5, 2008<br>Trial Date: None<br><br>Date: May 17, 2010<br>Time: 10:00 a.m.<br>Courtroom: 14<br><br>**PLAINTIFFS' CONSOLIDATED RESPONSE TO OBJECTIONS TO SETTLEMENT AGREEMENT** |

KNAPP, PETERSEN & CLARKE

-1-

775537.1 08000/00877

Plaintiffs Payam Saadat and Arutyun Marsikyan hereby submit this consolidated response to the objections to the parties' request that the Court grant Plaintiffs' Motion for Final Approval and Attorneys' Fees, Reimbursement of Costs, and Incentive Awards for the Class Representative Plaintiffs.

## I. INTRODUCTION

In deciding whether to approve the parties' proposed class action settlement, the ultimate question for the Court is whether the settlement is a fair, reasonable, and adequate arm's-length compromise of the contested issues. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). The views of the class are important in this regard and should be considered. *Molski v. Gleich*, 318 F.3d 937, 963 (9th Cir. 2003). Here, class members have taken the time to write or contact Class Counsel and express their appreciation and support for the proposed settlement. By contrast, only two class members have filed an objection with the Court. Plaintiffs specifically address those two objections below.

Plaintiffs respectfully submit that the record before the Court demonstrates that the proposed settlement is deserving of final approval and that Plaintiffs' Counsels' fee application should be granted.

## II. RESPONSE TO CLASS MEMBER OBJECTIONS

### A. The McKinley Objection

The issues raised in Mr. McKinley's objection do not challenge the quality of Counsel's work, the result obtained, nor any specific aspect of the fee requested in this case. Instead, Mr. McKinley's objection can be characterized as criticizing the payment of attorney's fees in class actions generally, derived from the false premise that these cases, as a whole, simply lack merit. Mr. McKinley's arguments, however, are made without support and fail to take into account any of the

KNAPP, PETERSEN & CLARKE

775537.1 08000/00877

allegations made in Plaintiffs' complaint and the extraordinary effort and work conducted by Class Counsel.

In his written objection, Mr. McKinley contends that "one might ask what is worth a million and a half dollars in attorneys' fees to get a few cars fixed in the rare instance that a problem actually developed." Had Mr. McKinley returned Counsel's repeated phone calls, he would have been informed that those "rare instances," as of April 16, 2010, have resulted in 1,510 claims totaling over $2.3 million. (*See* Declaration of Katie Horton ("Horton Decl.") ¶¶ 26-27.) Indeed, Plaintiffs' expert Collin Johns conservatively estimates that with a 5.03% failure rate, the maintenance program alone potentially will help avoid an additional 1,772 reed valve failures in the future, saving class members total approximate repair costs of $13,472,516. (*See* Declaration of Collin Johns in support of Plaintiffs' Motion for Attorney's Fees and Costs ("Johns Decl.") ¶¶ 19-23. In fact, Mercedes-Benz USA, LLC ("MBUSA") has so far spent over $4.7 million in goodwill and warranty repairs related to the flood damage. (*See* Declaration of Stephen M. Harris ("Harris Decl.," ¶ 28.) As for the "minimal benefit" that Mr. McKinley claims this lawsuit has so far brought to his "class," Plaintiffs direct the Court to the following class member comment:

> I, currently, have a Mercedes 2005 S-Class vehicle, in the repair shop, at the Mercedes dealership, where the vehicle was purchased. The car is in the shop due to damage caused by the ""reed-valve" problem . . . . To date, I have not picked up the vehicle, and upon its' completion, the total bill will be, approximately, $16,000. [¶] At this, particular, time I am currently unemployed, and can not afford to pay the $16,000, in order to get the vehicle released from the dealership. [¶] Could the dealership, knowing the outcome of the "Settlement," release the

|   |   |
|---|---|
| 1 | vehicle to me, upon completion of the repairs, because they |
| 2 | will be reimbursed by Mercedes USA?  Or, more |
| 3 | importantly, is there a possibility that the "Settlement" can |
| 4 | be denied by the Court (I've read all the court documents)? |

(*See id.* at Ex._26.)[1]

Further, Mr. McKinley's unsupported claim that "most MBZ owners [do not] park under trees for very long- most will garage the car etc. . . . ." contradicts relevant testimony.  For example, Plaintiff Dr. Saadat testified at his deposition that the majority of the time he parked his car on the street because he and his family own five cars while living in a house that has only a two-door garage.  Further, Dr. Saadat's testimony that neither he nor his family ever experienced similar flood damage with other vehicles, including other Mercedes-Benz vehicles not part of this lawsuit, directly contradicts Mr. McKinley's claim that it was Plaintiffs who were negligent in maintaining their vehicles.

Finally, Mr. McKinley's claim that the Class Vehicles were not defective is unsupported by the evidence presented by Plaintiffs' expert that the reed valves had a failure rate of over 5%.  *See U.S. v. General Motors Corp.*, 518 F.2d 420, 427 (C.A.D.C. 1975) (defect exists where a significant (*i.e.*, non-"*de minimus*") number of failures occur); *U.S. v. Ford Motor Corp.*, 453 F. Supp. 1240 at 1243, 1246 (D. D.C. 1978) (finding existence of defect based on replacement-part sales data); *United States v. Ford Motor Co.*, 421 F. Supp. 1239, 1241-42 (D.D.C. 1976) (existence of defect based on warranty return rate of 2%); *United States v. General Motors Corp.*, 417 F. Supp. 933, 938 (D.D.C. 1976) (GM stipulates that 300 fires in

---

[1] After receiving similar comments from class members, Plaintiffs' Counsel convinced MBUSA to agree to—and the Court to issue—an order that allows MBUSA to issue vouchers for free repairs to class members who indicate that they could not afford or otherwise are unable to have repairs made to their vehicles. (Harris Decl. ¶ 24.)

population of 375,000 vehicles constituted a significant number on which to base finding of defect), *aff'd*, 565 F.2d 754 (D.C. Cir. 1977). Here, there is no doubt that a 5.3% failure rate demonstrates the existence of a defect.

Clearly, the value of the benefit each Class Member will receive is significant, both in terms of the monetary value and, more importantly, the safety of both the vehicle's occupants and the general public using our nation's highways and roads. Given the ample support provided by Counsel here showing the outstanding benefit that this Settlement will provide to the class members, as well as Counsel's substantial efforts in achieving this excellent result, the Court should reject Mr. McKinley's unfounded and misguided objection. *See In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 23 980, 996, 998 (D. Minn. 2005) (overruling similar objections that "class actions have little purpose and attorneys should not be awarded for bringing such cases . . . .").

### B. The Cannata Objection

Ohio licensed attorney and objector Sam Cannata argues that the total value of the settlement cannot be determined until all claims are received and that no attorneys' fees should be awarded before that date. However, the precise value of the Settlement is not necessary to support the fee request because this is not a common fund case. In any event, the value of the Settlement to the Class Members has been estimated with some certainty because of the average cost of repair and the estimated failure rate of 5.03% as set forth in Colin Johns' Declaration. Indeed, Mr. Cannata agrees with these conservative estimates when he states, "Based on anecdotal historical evidence, it is doubtful if more than 5% of those eligible will actually file a claim." Thus, applying this failure rate to the nationwide class, Plaintiffs have conservatively estimated that the maintenance program will provide a monetized benefit to the Settlement Class of $13,472,301. (Johns Decl. ¶¶ 25-31.) Thus, the total monetary value of the settlement with respect to reimbursement claims under review as of April 16, 2010 ($2,365,630) and prevented or warranted

KNAPP, PETERSEN & CLARKE

775537.1 08000/00877

future failures ($13,472,301) is $15,837,931. (*Id.* ¶31.) Accordingly, Class Counsel's requested attorneys' fees of $1.5 million amounts to approximately 10% of the $15,837,931 benefit to the class—far below the Ninth Circuit's well-established 25% benchmark for attorneys' fee awards in common fund cases. *See Vizcaino v. Microsoft Corp.*, 142 Supp. 2d 1299, 1302-03 (W.D. Wash. 2001).

Moreover, since class members can make claims for settlement benefits (in addition to other relief afforded) with no cap to the relief available to them, it will be difficult to estimate the value of the settlement. Moreover, since the attorneys' fees will be assessed against MBUSA without reducing the relief available to the class, the utilizing the lodestar method is plainly most appropriate in this case. Accordingly, the requested multiplier of 1.25 under the lodestar method is also sufficient to grant Plaintiffs' request for the $1.5 million in attorney fees.[2]

Mr. Cannata also claims that Plaintiffs violated Federal Rule of Civil Procedure 23(h) by not giving class members adequate notice of their $1.5 million fee petition, which Plaintiffs filed after the objection deadline. However, Plaintiffs provided adequate notice to class members when they informed them that they intended to apply for an attorneys' fee award of no more than $1.5 million. As a string of recent cases make clear, this information is more than sufficient to satisfy the requirements of Rule 23(h). *See, e.g., Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D. Ohio 2008) ("Plaintiffs included in the Notice of Proposed Settlement . . . their request for payment of $3,000,000 in attorneys' fees and costs, to be paid

---

[2] Mr. Cannata's claim that that this is a coupon settlement is also without merit. Unlike coupon settlements, here, class members are not required to pay anything out of pocket to reap the benefits of the settlement. *See Browning v. Yahoo, Inc.*, 2007 WL 4105971, at *6 (N.D. Cal. 2007) ("Some objectors complained that the Amended Settlement is a 'coupon settlement' or that the benefit[s] are not transferable on a secondary market. However, the in-kind relief offered in this case is not a "coupon settlement" because it does not require class members to spend money in order to realize the settlement benefit[s].").

775537.1 08000/00877

separate and apart and in addition to the payments of $663 million to the VEBA, and thereby satisfied the notice requirement of Federal Rule of Civil Procedure 23(h)); *In re Bisys Securities Litigation*, 2007 WL 2049276 (S.D.N.Y. 2007) (notice to class that class counsel intended to "apply to the Court to award attorneys' fees . . . in an amount not greater than one-third (33%) of the settlement fund and for reimbursement of their expenses" deemed sufficient to "plainly" put class members "on notice that the attorneys' fees may be as high as one-third of the fund and so had had every reason to raise an objection if they thought this as excessive"); *Bessey v. Packerland Plantwell, Inc.*, 2007 WL 3173972 (W.D. Mich. 2007) ("Class Notice's language indicating class counsel 'will ask the Court for attorneys' fees plus reasonable out-of-pocket case costs and expenses costs up to 33% of the settlement fund' provides a fair estimate of the amount counsel would seek, consistent with the requirement of Fed. R. Civ. P. 54(d)(2)(B)."); *Lewis v. Walmart Stores, Inc.*, 2006 WL 3505851 (N.D. Okla. 2006) ("Pursuant to Fed. R. Civ. P. 23(h), plaintiffs' counsel mailed notice to the putative class members stating that counsel would seek one-third of the settlement proceeds as attorneys' fees").

Thus, there is nothing procedurally defective with Plaintiffs' fee petition. Indeed, fee petitions are often filed at the same time, or after objections are due; there is nothing inherently objectionable or untoward about this procedure. *See, e.g., In re Bisys Securities*, 2007 WL 2049276 (holding that even though the actual application for fees what not filed until after the deadline for objections had elapsed, "[n]onetheless, members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund so had every reason to raise an objection if they thought this was excessive.").

### III. CONCLUSION

For the foregoing reasons, and for those set forth in the memoranda and other papers concurrently filed in support of final settlement approval and class counsel's fee application, Plaintiffs and Class Counsel respectfully request that the proposed

-7-
KNAPP, PETERSEN & CLARKE

1 | settlement be granted final approval, and attorneys' fees, expenses, and incentive
2 | awards be granted in the amounts requested. Plaintiffs and Class Counsel also
3 | request that the objections of Cannata and McKinley be overruled.

Dated: May 6, 2010                KNAPP, PETERSEN & CLARKE

By: _____
Stephen M. Harris
Attorneys for Plaintiffs
ARUTYUN MARSIKYAN and
PAYAM SAADAT, individually and on
behalf of a class of similarly situated
individuals

KNAPP,
PETERSEN
& CLARKE

-8-

775537.1 08000/00877